UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERRY RYAN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 03-CV-1769-B |
| | § | ECF |
| | § | |
| FLOWSERVE CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM ORDER

Before the Court is Plaintiffs' Motion for Class Certification (doc. 239), filed May 30, 2006.

Plaintiffs move the Court to certify a plaintiff class of :

> All persons who purchased the publicly-traded equity []¹ securities of Flowserve
> Corporation between February 6, 2001 and September 27, 2002.  Excluded from the
> Class are defendants and members of their immediate families, any entity in which
> a defendant has a controlling interest and the legal representatives, heirs, successors
> or assigns of any excluded party.

(Mot. for Class Certification "Mot." at 2) After an extensive review of the submissions on hand, the

Court reluctantly finds that further briefing is necessary classes before the pivotal issue of certification

can be correctly decided.  More precisely and as explained below, the parties are directed to file

supplemental briefing on the sole issue of the number of classes to be certified no later than Monday,

April 16, 2007.  Accordingly, the Court DENIES Plaintiffs' Motion for Class Certification  without

prejudice.  Upon receipt of the additional briefing, the Court will consider all of the briefing

submitted by the parties.  A brief analysis of the issue follows.

---

¹At the class certification hearing, Plaintiffs clarified that they are only seeking certification of a class
of purchasers of equity securities as opposed to a class of purchasers of equity and debt securities.

1

# I.  BACKGROUND

This is a securities fraud case in which lead plaintiff Alaska Electrical Pension Fund ("Alaska Electrical") and named plaintiff Massachusetts State Carpenters Pension Plan ("Massachusetts Carpenters") (collectively, "the Funds") seek certification of a class action against Flowserve Corporation ("Flowserve"); C. Scott Greer ("Greer"), its CEO during the class period; Renee J. Hornbaker, its CFO during the class period;[2] PricewaterhouseCoopers LLP ("PwC"), its auditors; and Banc of America Securities LLC ("BofA") and Credit Suisse First Boston LLC ("CSFB"), two of the underwriters of Flowserve's stock offerings that were made during the class period.[3]

## A.    Factual Background

Flowserve manufactures pumps, seals, and valves and provides a variety of flow management services to the "process industries." (Fifth Am. Compl. ("Compl.") ¶ 51)  According to Plaintiffs, Flowserve's financial problems began prior to the class period when it acquired several other manufacturing companies and attempted to integrate them into Flowserve. (*Id.* ¶ 3-4)  Plaintiffs explain that in addition to issuing $1.1 billion in debt to acquire Ingersoll-Dresser Pump Co., Flowserve incurred many other costs due to dis-synergies during integration. (Mot. at 5)  For example, Plaintiffs describe how transfer of pumps between facilities caused shipments to customers to be made late or not at all. (*Id.*)  This, in turn, required Flowserve to pay liquidated damages for failure to meet deadlines and also caused the company to lose contracts with certain customers. (*Id.*)  Plaintiffs insist that the Flowserve Defendants received warnings about potential acquisition problems but omitted this information from Flowserve's forecasts to the market. (*Id.*)

The class period began on February 6, 2001 with Flowserve's report of its net income for the

---

[2]Flowserve, Greer, and Hornbaker will be referred to collectively as the "Flowserve Defendants."

[3]PwC, BofA, and CSFB will be referred to collectively as the "Underwriter Defendants."

year 2000 as $13.2 million.  (*Id.* at 5-6)  Plaintiffs contend that the overstatement of Flowserve's financial position caused the company's stock to trade at inflated levels.  (*Id.* at 6)  Plaintiffs also state that Flowserve continued to acquire companies during the class period and that these companies often had overstated inventories.  (*Id.*)  Plaintiffs assert that Flowserve's concealment of these inventory issues and overall mischaracterization of the company's financial status enabled Flowserve's stock price to remain inflated throughout the class period.  (*Id.*)

Plaintiffs further allege that Flowserve filed a shelf registration statement[4] on May 31, 2001 for the purposes of covering up the problems related to the company's recent acquisitions and to pay down a portion of the debt created by those acquisitions.  (*Id.*)  The shelf registration statement authorized the issuance at a future time of common stock worth $500 million.  (*Id.*)  The registration statement included financial figures approved by PwC during its audits of Flowserve.  (*See id.* at 4)  Plaintiffs claim that the use of the shelf registration statement allowed Flowserve to avoid stringent examination by the SEC when it was relying on overstated financials and had begun to violate its debt covenants.  (*Id.* at 7)  Flowserve earned $163 million from its November 2001 public offering and $289.8 million in its April 2002 offering.  (*Id.*)  Both offerings were underwritten in part by BofA and CSFB.  (*Id.* at 4)

The class period ended on September 27, 2002 when Flowserve reduced its earnings guidance for 2002 from $1.70-$1.90 per share to $1.45-$1.55.  (*Id.* at 8)  That day, Flowserve stock closed at $8.70 per share, down from $14.10 per share on September 26, 2002.  (*Id.*)  Plaintiffs argue that the reduction

---

[4]Shelf registration statements allow companies to file a registration statement with the SEC that complies with registration requirements up to two years in advance of a public offering.  The company may then offer its securities to the public as market conditions become favorable.

substantially reduced investors' reliance on the prior allegedly false representations by Flowserve and substantially reduced investors' inflated expectations regarding the future prospects of the Company . . . . substantially reduced the inflationary impact of the alleged false and misleading statements . . . . [and] alerted investors to the fact that Flowserve might be in violation of its debt covenants.

(*Id.*) On April 27, 2004, Flowserve restated its financial statements for 2000, 2001, and 2002, reducing net income by $23.6 million. (*Id.*) Flowserve restated its financial statements again on February 13, 2006—this time by $35.9 million. (*Id.*)

**B.    Procedural Background**

Plaintiffs filed suit on August 7, 2003 and have repeatedly amended the pleadings to produce the Fifth Amended Complaint. The complaint includes claims against the Flowserve Defendants under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b-5. (Compl. ¶¶ 463-472) These claims are based upon the Flowserve Defendants' alleged "material misrepresentations and/or omissions [] done knowingly or recklessly for the purpose and effect of concealing Flowserve's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities." (*Id.* ¶ 468) Plaintiffs set forth separate claims against Greer and Hornbaker as controlling persons under § 20(a) of the Exchange Act, 15 U.S.C. 78t. (*Id.* ¶¶ 473-476) The complaint also contains claims against both the Flowserve Defendants and the Underwriter Defendants under § 11 of the Securities Act of 1933, 15 U.S.C. 77k, for their roles in the November 2001 and April 2002 offerings made under the defective registration statement. (*Id.* ¶¶ 477-493) Additionally, Plaintiffs seek to hold Greer and Hornbaker liable for wrongful conduct as controlling persons under § 15 of the Securities Act, 15 U.S.C. § 77o. (*Id.* ¶¶ 494-497) Although Defendants filed motions to dismiss under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, the Court denied these motions in their entireties at a hearing on November 18, 2005.

Plaintiffs now move for certification of a class action under Rule 23, subsections (a) and (b)(3). Defendants oppose class certification, primarily challenging the adequacy of Plaintiffs and their chosen counsel. Further, Defendants reason that if the Court decides to certify the instant case as a class action, it should certify three classes—one class of § 10(b) claimants, one class of § 11 claimants who bought Flowserve stock in the November 2001 offering, and one class of § 11 claimants who bought Flowserve stock in the April 2002 offering. On September 7, 2006, the Court heard oral arguments on class certification. The parties have briefed the issues, and the Court now turns to the merits of its decision.

## II. LEGAL STANDARD

Under Rule 23(a), a plaintiff may only sue as the representative of a larger class if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). The party seeking certification bears the burden of proof and must demonstrate that the proposed class and its representative(s) satisfy the requirements of Rule 23(a). *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). Additionally, a suit must meet one of the requirements of Rule 23(b) to be maintained as a class action. Plaintiffs move for certification under subsection (b)(3), insisting that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). A court may look beyond the pleadings so that it may fully "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.

5

1996).  Nonetheless, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)).

## III.  ANALYSIS

The Defendants have all requested that—if the Court deems class treatment appropriate—that it certify one § 10(b) class and separate § 11 classes for each offering.  Plaintiffs, on the other hand, strongly oppose certification of multiple classes, pushing instead for one unified class of Flowserve investors.  The Court recognizes that a decision on the number of potential classes need not precede or even coincide with its determination on class certification. Nonetheless, given the impact of the certification decision on the course of this case and all involved, an informed decision on the number of classes,  should accompany a decision to certify—if such a decision is made.  Accordingly, no later than April 16, 2007, the Defendants shall submit more detailed briefing on their exact request and any alternative proposals they may have.  Plaintiffs may respond within twenty days of the Defendants' filing.  This response should include alternate class definitions to be used if the Court were to certify one, two, or three classes.  Additionally, Plaintiffs should amend their current proposed class definition to reflect their argument at the class certification hearing that they do not seek to include purchasers of debt securities in any class and that they are not seeking recovery for aftermarket purchasers on the § 11 claims.  If the Defendants would like to file a reply brief, they must do so ten days thereafter.

## V.  CONCLUSION

For the foregoing reason, the Court DENIES Plaintiffs' motion without prejudice but will resume consideration of the Motion for Class Certification after it has received the requested

briefing.  The parties should note that this development in the case will NOT serve to delay the mediation scheduled for June 2007.

     SO ORDERED.

     SIGNED March 26th , 2007.


                                   _____

                                   JANE J. BOYLE
                                   UNITED STATES DISTRICT JUDGE