IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERRY RYAN, On Behalf of Himself And All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FLOWSERVE CORPORATION, C. SCOTT GREER, RENEE J. HORNBAKER, PRICEWATERHOUSECOOPERS LLP, BANC OF AMERICA SECURITIES LLC, and CREDIT SUISSE FIRST BOSTON LLC<br><br>Defendants | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3-03CV1769-B (Consolidated with 3:03-CV-1827-B; 3:03-CV-1846-B; 3:03-CV-2079-B)<br><br><br><br><br><br>CM/ECF |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*
TO EXCLUDE THE TESTIMONY AND OPINIONS OF PROPOSED
EXPERT ALLEN FERRELL**

## TABLE OF CONTENTS
**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Professor Ferrell is a Pre-Eminent Scholar with Substantial Experience in the Fields of Securities Law and Financial Economics. ........................................... 2

    B. Plaintiffs Have Mischaracterized the Scope of Professor Ferrell's Engagement. ................................................................................................. 4

    C. Plaintiffs Have Mischaracterized Professor Ferrell's Testimony. ........................ 5

    D. Plaintiffs Have Invented a "Custom and Practice" Exception to the Prohibition on Expert Opinions on the Law. ......................................................... 9

III. CONCLUSION .............................................................................................................. 11

Flowserve Corporation, C. Scott Greer, Renee J. Hornbaker, PricewaterhouseCoopers, LLP, Banc of America Securities LLC, and Credit Suisse First Boston LLC ("Defendants") file this Opposition to Plaintiffs' Motion *In Limine* to Exclude the Testimony and Opinions of Proposed Expert Allen Ferrell ("Plaintiffs' Motion"), and show as follows:

## I. INTRODUCTION

Plaintiffs designated law professor Marc Steinberg as a proposed expert. *See* Designation of Experts by Mass. State Carpenters Pension Fund, Alaska Electrical Pension Fund, filed April 8, 2007, Docket No. 524; *see also* Defendants' Motion to Exclude the Reports and Testimony of Marc I. Steinberg, filed July 13, 2007, Docket No. 651 ("Motion to Exclude Steinberg"). In their Motion to Exclude Steinberg, Defendants explained why Steinberg's proposed testimony should be precluded under the Federal Rules of Evidence. Motion to Exclude Steinberg at 4-16. Given Plaintiffs' proffer, however, Defendants designated Professor Ferrell of Harvard Law School in rebuttal, noting that if the Court (or Plaintiffs) should determine that the Steinberg testimony will not be introduced, then Professor Ferrell's designation will be withdrawn. *Id.* at 1, n.2.

Plaintiffs, having been the first to proffer a law professor as an expert witness, now strain to find reasons why Defendants' law professor is somehow less appropriate than their own. Accordingly, Plaintiffs' Motion attempts to minimize Professor Ferrell's pre-eminence in the area of securities law and regulation and repeatedly mischaracterizes his testimony.

Plaintiffs' Motion demonstrates why a battle among competing law professors will not be helpful for the jury. *See also* Motion to Exclude Steinberg at 4, 14-15. However, if such testimony is to be allowed at all, there is no sound reason to admit the testimony of Plaintiffs' proposed law professor expert while excluding the testimony of Professor Ferrell. Accordingly, Plaintiffs' Motion should be denied in its entirety, either as moot (if Plaintiffs' proposed expert Steinberg is excluded, in which case Professor Ferrell is withdrawn) or for its lack of merit.

## II. ARGUMENT

**A. Professor Ferrell is a Pre-Eminent Scholar with Substantial Experience in the Fields of Securities Law and Financial Economics.**

Plaintiffs have baselessly attacked Professor Ferrell as "woefully lacking in the experience necessary to opine on the subject matters in his report." Plaintiffs' Motion at 13. The following is a partial summary of the relevant background that Plaintiffs must think is "woefully lacking":

- Professor Ferrell holds a law degree from Harvard Law School, served as Editor of the Harvard Law Review, and was a clerk for United States Supreme Court Justice Anthony Kennedy.

- He is the Harvey Greenfield Professor of Securities Law at Harvard Law School, currently in his ninth year, and is a Faculty Associate at Harvard's John F. Kennedy School of Government.

- Professor Ferrell holds a Ph.D. in economics from The Massachusetts Institute of Technology (Field: Econometrics and Finance).

- He is an Academic Fellow to the National Association of Securities Dealers ("NASD").

- He is a Member of the Board of Economic Advisors to the NASD.

- He is a Member of the American Law Institute Project on the Application of U.S. Financial Regulations to Foreign Firms and Cross-Border Transactions.

- He is an Academic Expert on Shareholder Rights for the Committee on Capital Markets Regulation, advising the United States Department of the Treasury in securities law reforms.

- He has numerous publications in the area of securities law and regulation.

*See* App. to Plaintiffs' Motion, Ex. A at APP0024-26 (Curriculum Vitae).[1]

---

[1] In addition, shortly after his deposition, Professor Ferrell testified before the United States Senate Subcommittee on Securities, Insurance and Investment (Committee on Banking, Housing and Urban Affairs) on securities law issues, including the current state of securities regulation and its effect on U.S. competitiveness. *See* CQ Congressional Testimony, "Cross-Border Stock Exchange Mergers" – Statement of Allen Ferrell, Professor, Harvard Law School, July 1, 2007 (2007 Congressional Quarterly, Inc.).

**DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY AND OPINIONS OF PROPOSED EXPERT ALLEN FERRELL**                                  Page 2

In the face of these credentials, Plaintiffs' "make-weight" attacks on Professor Ferrell's qualifications border on the absurd. For example:

- Plaintiffs complain that Professor Ferrell has "limited teaching experience" because he has been a Harvard law professor for "only" nine years. Plaintiffs' Motion at 13-14.

- Plaintiffs complain that Professor Ferrell has "never taught separate courses on the issues of loss causation and §11 tracing." *Id.* at 14. Plaintiffs fail to note any law school that offers such "separate courses." Nor do they suggest that their proffered expert Steinberg has taught "separate courses" on materiality, scienter, or the Section 11 due diligence defense, upon which he freely opines in the Steinberg Report. *See* Motion to Strike Steinberg at 3, 11.

- "Professor Ferrell has never testified in any trial." Plaintiffs' Motion at 13. Of course, if this was a disqualifying factor then no expert would ever reach his or her first trial.

- "Professor Ferrell has never testified on behalf of a plaintiff in any case." *Id.* This is hardly a surprising circumstance given that, as Plaintiffs note, Professor Ferrell has only been deposed as an expert in one prior litigation. *Id.* Professor Ferrell has hardly made a career out of serving as an expert witness -- for plaintiffs or for defendants. Plaintiffs fail to explain why this should be considered a disqualifying factor.

Confusingly, Plaintiffs also level certain critiques at Professor Ferrell's employment experience that are equally true of their own proposed law professor Steinberg:

- "Professor Ferrell has never worked in the banking industry." Plaintiffs' Motion at 13. As noted in Defendants' Motion to Strike Steinberg, Plaintiffs' proposed law professor expert has no employment experience in banking either. *See* Motion to Strike Steinberg at 11.

- "Professor Ferrell is not a certified public accountant, has no accounting background and has never prepared any financial statements." Plaintiffs' Motion at 13. Again, the same may be said of Plaintiffs' proposed expert Steinberg. *See* Motion to Strike Steinberg at 11.

If Plaintiffs genuinely believe that these are disqualifying factors, then they should not have designated Steinberg as a proposed expert in the first instance. Moreover, they should now voluntarily withdraw their designation of Steinberg, in which case Professor Ferrell's rebuttal testimony need not be proffered by Defendants.

**DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE**
**TESTIMONY AND OPINIONS OF PROPOSED EXPERT ALLEN FERRELL**                      Page 3

B.  **Plaintiffs Have Mischaracterized the Scope of Professor Ferrell's Engagement.**

Throughout Plaintiffs' Motion, Plaintiffs misapprehend the scope of Professor Ferrell's engagement. As noted in the Ferrell Report, as well as in Professor Ferrell's deposition and Defendants' Motion to Strike Steinberg, the purpose of the engagement was "to opine on the assertions in the Report of Marc I. Steinberg." *See* App. to Plaintiffs' Motion, Ex. A at APP0002. Professor Ferrell relied upon the information cited by Steinberg within the Steinberg Report. *Id.*, Ex. B at APP0051-52 (Ferrell Tr. at 19:24 - 20:8). Accordingly, when Plaintiffs complain about the "miniscule amount of information" relied upon by Professor Ferrell, Plaintiffs' Motion at 9, this only serves to undercut the work of their own proffered expert.

Elsewhere, Plaintiffs complain that "Professor Ferrell's opinion that there was no negative stock market reaction upon announcement of the restatement is based solely upon his review of Lucy Allen Report . . . ." Plaintiffs' Motion at 12. But Plaintiffs fail to note the broader context of Professor Ferrell's discussion. Professor Ferrell's fundamental point is that Steinberg never addresses stock market reaction and loss causation within his proffered conclusions, rendering Steinberg's assertion of "strict liability" under Section 11 incomplete. *See* App. to Plaintiffs' Motion, Ex. A at APP0002 (sixth bullet), APP0015, APP0017-19; *see also id.*, Ex. B at APP0220 (Ferrell Tr. at 188:14-20).[2] Professor Ferrell required neither the Allen Report, or any other expert report, to make this critical observation. While Professor Ferrell also noted later in his deposition that he concurred in the methodology used by the Allen Report, given that he is not only a law professor but also a financial economist, it is inaccurate for Plaintiffs to imply that he simply accepted the Allen Report at face value. *See* App. to Plaintiffs' Motion, Ex. A at APP0015-17; Ex. B at APP0223 (Ferrell Tr. at 191:9-12).

---

[2] Professor Ferrell has also noted that the Steinberg Report reaches a conclusion of "strict liability" under Section 11 without addressing the critical element of "tracing" which is necessary for any recovery under that statute. *See* App. to Plaintiffs' Motion, Ex. A at APP0017-19; Ex. B at APP0089 (Ferrell Tr. at 57:1-12).

C. **Plaintiffs Have Mischaracterized Professor Ferrell's Testimony.**

In the face of Professor Ferrell's credentials, Plaintiffs resort to blatant mischaracterizations of his testimony in an unsuccessful effort to impugn his work product, as shown in the following examples from Plaintiffs' Motion:

(1) "Professor Ferrell could not remember documents that supported his assertion that financial covenant violations are a well-known fact . . . ." Plaintiffs' Motion at 10.

Professor Ferrell did not so testify. Rather, Professor Ferrell was asked: "What's your basis for saying that financial covenant violations are, in fact, quite common is a well-known fact in accounting finance literature?" Professor Ferrell clearly responded: "Well, I cite a study from the accounting and finance literature for that proposition. And my memory, from reading debt covenant papers, is that's an observation that's often made in those papers." *See* App. to Plaintiffs' Motion, Ex. B at APP0160 (Ferrell Tr. at 128:7-15). Professor Ferrell went on to specifically reference in his testimony both the **"large sample study of the issue"** and **"the Accounting Horizons paper,"** cited by name in his Report. *Id.*, Ex. B at APP0161 (Ferrell Tr. at 129:1-12).[3] The fact that Professor Ferrell stated "I can't recite the titles off the top of my head," hardly implies that his written report lacked academic support – as Plaintiffs' Motion wrongly implies. *Id.*, Ex. B at APP0160 (Ferrell Tr. at 128:19-20).[4] Indeed, it is the opinions of Plaintiffs' proposed expert Steinberg regarding hypothetical lender reaction to debt covenant violations that lack any academic support whatsoever. *See* Motion to Strike Steinberg at 13.

---

[3] The "large sample study" cited by Professor Ferrell is: I. Dichev and D. Skinner, 2001, *Large sample evidence on the debt covenant hypothesis*, University of Michigan working paper, subsequently published in the peer-reviewed Journal of Accounting Research, 2002, 40(4). The "Accounting Horizons paper" cited is the peer-review published paper by V. Gopalakrishnan and M. Parkash, 1995, *Borrower and lender perceptions of accounting information in corporate lending agreements*, Accounting Horizons 9: 13, 20. *See* App. to Plaintiffs' Motion, Ex. A at APP0008.

[4] Indeed, the Ferrell Report expressly demonstrates that "financial covenant violations are in fact quite common. One study found, for instance, that approximately 30% of firms in its large sample (which consisted of tracking 1,300 loans over time) experienced a violation." App. to Plaintiffs' Motion, Ex. A at APP0008.

**DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY AND OPINIONS OF PROPOSED EXPERT ALLEN FERRELL**                                                         Page 5

(2) "Professor Ferrell readily admits that in support of this proposition [regarding "the incidence and consequences of financial covenant violation"], he relies upon studies that were not published, peer-reviewed or tested." Plaintiffs' Motion at 11.

Professor Ferrell did not so testify. Indeed, as he clearly stated at his deposition, Professor Ferrell's statement that bank waivers of covenant violations occur at a high rate is drawn from a well-known **peer-reviewed, published** study. *See* V. Gopalakrishnan and M. Parkash, 1995, *Borrower and lender perceptions of accounting information in corporate lending agreements*, Accounting Horizons 9: 13, 20; *see also* App. to Plaintiffs' Motion, Ex. A at APP0008; Ex. B at APP0157 (Ferrell Tr. at 125:7-19). Plaintiffs do not take issue with this study, nor do they assert that reliance on this study was improper. Moreover, a working paper from 2001 cited by Professor Ferrell, containing findings on the high incidence of bank covenant violations, was subsequently published in a peer-reviewed journal: "Large-Sample Evidence on the Debt Covenant Hypothesis," Ilia D. Dichev and Douglas J. Skinner; Journal of Accounting Research, 2002, 40(4), pp. 1091.[5] Plaintiffs have made no challenge to the substance of this study. Plaintiffs' claim that "Professor Ferrell's opinions are based primarily upon data that has never been subjected to peer review or publication," Plaintiffs' Motion at 12, is simply false.

(3) "Professor Ferrell was also unaware of APB Opinion 20 . . ." Plaintiffs' Motion at 10.

Professor Ferrell did not so testify. To the contrary, Professor Ferrell was asked "Have you ever heard of APB 20?" and he responded in the affirmative, but further stated that he could not recite under oath its precise contents[6] without refreshing his recollection. App. to Plaintiffs'

---

[5] Moreover, Professor Ferrell explained at his deposition that these studies cite and discuss other *peer-reviewed, published* studies for the proposition that financial covenant violations are common. *See* App. to Plaintiffs' Motion, Ex. B at APP00160 (Ferrell Tr. at 128: 7-22). Plaintiffs do not dispute this testimony.

[6] Indeed, Plaintiffs grossly misstate the contents of APB Opinion 20. *See* Plaintiffs' Motion at 10. While APB Opinion 20 discusses restatements resulting from errors, mistakes, or "oversight or misuse of facts that existed at the time," APB Opinion 20, ¶ 13, Plaintiffs erroneously add the phrase "and were known or should have been known" in their description, improperly attempting to import an admission of scienter or recklessness into such restatements.

Motion, Ex. B at APP0193 (Ferrell Tr. at 161:2-6). He further noted that APB Opinion 20 had not been raised anywhere in the report by Professor Steinberg, the proposed expert to whom Professor Ferrell was responding. *Id.*, Ex. B at APP0194 (Ferrell Tr. at 162:8). Plaintiffs fail to explain why Professor Ferrell's inability to recite from memory an accounting opinion not referenced by their own proposed expert presents a disqualifying circumstance.[7]

> (4) "Professor Ferrell acknowledged that the information he reviewed was so insufficient that he was unable to make an independent determination of whether or not CEO Greer or CFO Hornbaker had satisfied their due diligence defense under §11." Plaintiffs' Motion at 11.

Professor Ferrell did not so testify. Defendants have maintained that the attempt by Plaintiffs' proposed expert Steinberg to define the legal test for the due diligence defense, and then to weigh facts and credibility issues to determine if the defense is met, is an improper invasion of the provinces reserved to the Court and the jury. *See* Motion to Strike Steinberg at 4-9. As Professor Ferrell testified, the fundamental purpose of his engagement was to analyze Steinberg's Report, not to reach his own subjective conclusions about whether the due diligence defense was in fact satisfied. Professor Ferrell's conclusion was that there is nothing in Steinberg's analysis, or the documents he cited, that undermines the availability of a due diligence defense.[8] Plaintiffs' argument about Professor Ferrell's "insufficient" information is

---

[7] In similar fashion, Plaintiffs complain that "Professor Ferrell was unaware of the amicus curia brief of the [SEC] in *In re Sunbeam Sec. Litig.*" Plaintiffs' Motion at 10. *First*, this brief is not raised in the Steinberg Report to which Professor Ferrell was responding. *Second*, SEC advocacy in an amicus brief is not equivalent to an SEC rule or adjudication. *Third*, while Plaintiffs apparently view this amicus brief as significant, it is not even included by the SEC on its website list of over forty "friend of court" briefs by the SEC between 1996-2007: http://www.sec.gov/litigation/amicusbriefs.shtml.

[8] Plaintiffs also complain that Professor Ferrell did not review their opposition to dismissal, Plaintiffs' Motion at 10, but fail to explain why this was necessary. As Professor Ferrell testified, his engagement was to analyze the Steinberg Report and he reviewed the documents cited in that Report. *See* App. to Plaintiffs' Motion, Ex. B at APP0051-52 (Ferrell Tr. at 19:24-20:8). Long after Professor Ferrell had prepared his Report, Defendants learned that Steinberg had in fact reviewed and relied upon additional documents other than those cited in his Report. *See* Motion to Compel or Strike Steinberg, filed June 18, 2007, Docket No. 571.

**DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY AND OPINIONS OF PROPOSED EXPERT ALLEN FERRELL**  Page 7

Case 3:03-cv-01769-B Document 743 Filed 08/03/07 Page 10 of 15 PageID 44533

simply a red herring.[9]

> (5) "Professor Ferrell incorrectly testified that he believes that the Boston Company. . . is a plaintiff in this case." Plaintiffs' Motion at 12.

Professor Ferrell did not so testify. The Boston Company was the investment manager for both Plaintiffs and had the sole responsibility for Plaintiffs' Flowserve transactions during the putative class period.[10] When asked "Who are the plaintiffs in this case?" Professor Ferrell correctly identified the "Alaska pension fund" and said that he would otherwise "have to look at [the Complaint] to see the list of plaintiffs again." App. to Plaintiffs' Motion, Ex. B at APP0120 (Ferrell Tr. at 88:4-10). Professor Ferrell further correctly identified The Boston Company witness Mr. Dishop as "a stock analyst at Boston Company." *Id.*, Ex. B at APP0119 (Ferrell Tr. at 87:20-24). With regard to The Boston Company's status in this litigation, Professor Ferrell testified "I don't know the answer to that. I believe Boston Company might have been -- was a plaintiff in the case. But I would have to double check the record for that." *Id.*, Ex. B at APP0119-120 (Ferrell Tr. at 87:25 - 88:3). In any event, Plaintiffs fail to explain how Professor Ferrell's thought that The Boston Company previously "might have been" a plaintiff in the case somehow affects the testimony upon which he relied. Plaintiffs' Motion certainly does not suggest that the testimony of their investment manager's representative was untrue.

---

[9] Plaintiffs also assert that Professor Ferrell did not read the November 2001 prospectus supplement until after he completed his report. Plaintiffs' Motion at 10-11. Indeed, Professor Ferrell accepted as true Professor Steinberg's assertions about the November 2001 supplement, and even so, found that Steinberg's analysis was flawed. Moreover, Plaintiffs fail to note that Professor Ferrell reviewed the April 2002 prospectus supplement in connection with preparing his report, and further testified that his subsequent review of the November 2001 prospectus supplement had not changed any of his conclusions in his report. App. to Plaintiffs' Motion, Ex. B at APP0054-55 (Ferrell Tr. at 22:13-23:1).

[10] *See* App. to Flowserve Opp. to Class Cert., Ex. 13 at A320; Ex. 14 at A338. Plaintiffs argue that "Professor Ferrell . . . testified that he does not know when plaintiff's purchased their shares of Flowserve stock and did not even review documents reflecting plaintiffs' purchases of Flowserve stock." Plaintiffs' Motion at 9-10. However, Professor Ferrell relied upon the testimony of the representative from Plaintiffs' sole investment manager, Mr. Dishop of The Boston Company, that Plaintiffs' offering and aftermarket purchases of Flowserve stock were held indistinguishably in the funds' accounts. *See* App. to Plaintiffs' Motion, Ex. A at APP0019, *see also* App. to Flowserve Opp. to Class Cert., Ex. 48 at A762.1, A771, A771.1. Given this testimony, Professor Ferrell testified that "there was a lack of tracing with respect to the shares that Mr. Dishop testified," App. to Plaintiffs' Motion, Ex. B at APP0201 (Ferrell Tr. at 169:5-6), which in fact is the entirety of Plaintiffs' transactions at issue in this case.

DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY AND OPINIONS OF PROPOSED EXPERT ALLEN FERRELL                                Page 8

(6) "Professor Ferrell testified that he is not even aware of the meaning of the phrase custom and practice." Plaintiffs' Motion at 15.

Professor Ferrell did not so testify. Rather, Professor Ferrell responded "I think it can mean different – a number of different things." App. to Plaintiffs' Motion, Ex. B at APP0072 (Ferrell Tr. at 40:13-14). Indeed, Professor Ferrell leveled a criticism at the repeated and vague use of the phrase "custom and practice" by Plaintiffs' proposed expert Steinberg in the Steinberg Report: "I think Mr. Steinberg in his deposition said it means New York Stock Exchange listing requirements perhaps. He also said that it meant to him what a securities lawyer would think, so **I certainly understand those definitions of custom and practice**, but I don't see – I did not see in Mr. Steinberg's report or in his deposition a clean, simple -- clean, straightforward definition of that phrase, so I think the phrase does have content, **but one can attach different definitions to it, and so I think it leads to imprecision.**" *Id.*, Ex. B at APP0072 (Ferrell Tr. at 40:14-25) (emphasis added). Because Plaintiffs are uncomfortable with this answer, and its implications for Steinberg's numerous "opinions," they simply resort to misstating Professor Ferrell's testimony.

D.   **Plaintiffs Have Invented a "Custom and Practice" Exception to the Prohibition on Expert Opinions on the Law.**

Finally, again relying on the phrase "custom and practice," Plaintiffs strain to draw a distinction requiring the Court to exclude the opinions of Professor Ferrell but yet admit the proffered conclusions of Plaintiffs' law professor expert Steinberg. Without citation, Plaintiffs baldly assert that "without grounding his or her opinions upon **custom and practice**, an expert cannot opine about the law." Plaintiffs' Motion at 15 (emphasis added). Plaintiffs do not explain what they mean by "custom and practice." Moreover, none of the authorities referenced by Plaintiff contain such a holding, however. *See Snap-Drape, Inc. v. Comm'r*, 98 F.3d 194, 198 (5th Cir. 1996); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988). Indeed, as every Court of

Appeals has held, and as Plaintiffs' counsel have elsewhere noted, the principle that expert "opinion" concerning the law is inadmissible is "'so well established that it is often deemed a basic premise or assumption of evidence law – a kind of axiomatic principle.'" *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting Thomas E. Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U. KAN. LAW REV. 325, 352 (1992)); *see also* Motion to Exclude Steinberg at 4-6 (and cases cited therein), and Ex. A thereto (Motion *In Limine* to Preclude the Testimony of Ronald J. Gilson, filed by Lerach Coughlin Stoia Geller Rudman & Robbins, July 7, 2006, *In re Cisco Systems, Inc. Sec. Litig.*, (N.D. Cal.)), at 3-6 (and cases cited therein). None of these rulings approve of expert "opinions" on the law merely because they are cloaked with the phrase "custom and practice," as in the Steinberg Report. Notably, the only opinion on "custom and practice," cited in Plaintiffs' Motion at 15, is a Louisiana state court opinion on the admissibility of testimony by an oil and gas expert based on "custom and practice" in that industry that "would assist the jury in obtaining a full understanding of the factors involved in making a determination whether to lease or abandon a [drilling] site." *See State of La. Chesapeake Operating, Inc. v. Richardson*, 884 So.2d 1263, 1266 (La. App. 3rd Cir. 2004). Plaintiffs have strayed very far afield in their efforts to justify the improper opinions of their own proffered law professor expert while seeking to exclude Professor Ferrell.

In short, Plaintiffs would have the Court ignore the prohibition on expert legal opinions when it comes to their own law professor Steinberg, but then apply such a prohibition to Professor Ferrell who was designated in rebuttal to Steinberg. They cannot have it both ways. Defendants have explained why Steinberg's proposed testimony should be precluded under the Federal Rules of Evidence. Motion to Exclude Steinberg at 4-16. If such testimony is to be admitted, however, there is no basis for excluding the testimony of Professor Ferrell.

## III. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion *In Limine* to Exclude the Testimony and Opinions of Proposed Expert Allen Ferrell should be denied in its entirety, either as moot (if Plaintiffs' proposed expert Steinberg is excluded, in which case Professor Ferrell is withdrawn) or for its lack of merit.

Dated: August 3, 2007

_____
Noel M.B. Hensley
State Bar No. 09491400
Carrie L. Huff
State Bar No. 10180610
Nicholas Even
Texas Bar No. 24014446
R. Thaddeus Behrens
State Bar No. 24029440
HAYNES AND BOONE, LLP
901 Main Street, Suite 3100
Dallas, Texas 75202-3789
(214) 651-5000
(214) 651-5940 (Facsimile)

ATTORNEYS FOR DEFENDANT
FLOWSERVE CORPORATION


_____ by permission
Fletcher L. Yarbrough
State Bar No. 22137000
Richard A. Rohan
State Bar No. 17203800
Todd A. Murray
State Bar No. 00794350
CARRINGTON COLEMAN SLOMAN &
BLUMENTHAL L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202
214.855.3000
214.855.1333 (Facsimile)

ATTORNEYS FOR DEFENDANT
C. SCOTT GREER

_David W. Klaudt /by permission_
C. W. Flynn, IV
State Bar No. 07196580
David W. Klaudt
State Bar No. 00796073
Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2000
Dallas, Texas 75201-6776
(214) 740-8000
(214) 740-8800 (Facsimile)

ATTORNEYS FOR DEFENDANT RENEE J. HORNBAKER


_Rodney Acker /by permission_
Rodney Acker
State Bar No. 00830700
Ellen Sessions
State Bar No. 00796282
FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201

ATTORNEYS FOR DEFENDANTS BANC OF AMERICA SECURITIES LLC AND CREDIT SUISSE FIRST BOSTON LLC

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing was served on this 3rd day of August, 2007 to the following individuals:

Willie C. Briscoe
Provost & Umphrey Law Firm, LLP
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204

Todd A. Murray
Carrington Coleman Sloman
  & Blumenthal L.L.P.
901 Main Street, Suite 5500
Dallas, TX 75202

Rodney Acker
Fulbright & Jaworski L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201

Willow Radcliffe
Lerach Coughlin Stoia & Robbins LLP
100 Pine Street, Suite 2600
San Francisco, California 94111

David W. Klaudt
Locke Liddell & Sapp LLP
2200 Ross Avenue, Suite 2000
Dallas, Texas 75201-6776

M. Byron Wilder
Gibson, Dunn & Crutcher LLP
2100 McKinney Avenue
Suite 1100
Dallas, TX 75201

_/s/ Nicholas Even_